IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICIA A. FREEMAN,

    Plaintiff,                                No. CIV S-09-2334 DAD

    v.

MICHAEL J. ASTRUE,                    <u>ORDER</u>
Commissioner of Social Security,

    Defendant.
_____/

       This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and remand. For the reasons explained below, plaintiff's motion for summary judgment and remand is denied and the decision of the Commissioner of Social Security (the Commissioner) is affirmed.

## PROCEDURAL BACKGROUND

       On December 5, 2006, plaintiff protectively filed an application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act. (Transcript (Tr.) at 11, 81-83.) The application was denied initially on August 6, 2007, and upon reconsideration on November 27, 2007. (Tr. at 57-60, 62-65.) Plaintiff submitted a timely request for a hearing on the denials. (Tr. at 67-68.) At the administrative hearing held on

/////

October 15, 2008, plaintiff was unrepresented and testified.[1]  (Tr. at 22-51.)  Charnae Taylor, a lay witness for plaintiff, and Susan Miranda, an impartial vocational expert, also testified at the administrative hearing.  (Tr. at 23.)  In a decision issued on March 12, 2009, the ALJ determined that plaintiff had not been under a disability from the alleged onset date of September 29, 2006 through the date of the decision.  (Tr. at 11-21.)  The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since September 29, 2006, the alleged onset date.  (20 CFR 404.1571 et seq.)
>
> 3. The claimant has the following severe impairments: degenerative disc disease, diabetes mellitus, hepatitis C, and depression (20 CFR 404.1521 et seq.)
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (CFR 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).  She is able lift and carry 20 pounds occasionally, 10 pounds frequently, sit 6 hours, and stand and walk in combination for 6 hours, out of an 8-hour workday.  She is limited to work requiring occasional bending, stooping, twisting, squatting, kneeling and climbing stairs or ramps, but is unable to climb ladders, ropes, or scaffolds.  She is precluded from working around heights or hazardous, moving machinery.  The claimant is limited to work involving simple, repetitive tasks.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).[2]

/////

---

[1] Prior to the hearing, plaintiff was represented by counsel (Tr. at 54-55), but chose to terminate her relationship with her counsel in January 2008 and to represent herself.  (Tr. at 72.)  At the administrative hearing, plaintiff assured the ALJ that she did not want additional time to find alternative legal counsel, but rather wished to proceed without counsel.  (Tr. at 27-28.)

[2] Plaintiff engaged in past work as a records manager, retail sales associate, and fast food supervisor.  However, the vocational expert testified that plaintiff could not perform past work due to the level of skill and/or exertion required.  (Tr. at 46-47.)

7. The claimant was born on November 7, 1957 and was 48 years old, which is defined as a "younger individual age 18-49," on the alleged disability onset date. The claimant subsequently changed age category to "closely approaching advanced age" (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 29, 2006 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 13-21.)

On June 26, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 1-4.) On August 20, 2009, plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

/////

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations. Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

/////

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances the following arguments in support of her motion for summary judgment and remand: (1) the ALJ erred in failing to develop the record as to plaintiff's functional limitations, but instead relied on the unsupported opinion of a consultative examiner who lacked up-to-date medical records; (2) the ALJ erred in failing to find plaintiff's wrist pain and obesity to be severe impairments; (3) the ALJ erred in failing to consider the combination of plaintiff's impairments in determining her residual functional capacity; and (4) the ALJ's credibility finding is not supported by substantial evidence. Plaintiff seeks an order reversing the decision of the Commissioner and remanding the case for further administrative proceedings to cure these alleged defects. Plaintiff's arguments are addressed below.

**I. Duty to Develop the Record**

Plaintiff argues that the ALJ's decision should be reversed because he breached his duty to develop the record. Although it is the claimant's burden to prove that she is disabled, it is well established that the ALJ has an affirmative duty throughout the administrative proceeding to fully and fairly develop the record and to assure that the claimant's interests are considered. Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). Rather than proceeding as a "mere umpire" at the administrative hearing, the ALJ must fulfill his independent duty to fully develop the record. Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). When a claimant is not represented by counsel, the ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's duty in this regard is also heightened in cases where
/////

the claimant has mental impairments and may not be able to protect her own interests.  Id.; De Lorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).  See Brown, 713 F.2d at 443.  When confronted with ambiguous evidence or a record inadequate to permit proper evaluation of the evidence, it is the ALJ's duty to "conduct an appropriate inquiry."  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).  The ALJ can discharge this duty in various ways, such as (1) making a reasonable attempt to obtain additional medical evidence from the claimant's treating sources, (2) ordering a consultative examination where the medical evidence is incomplete or unclear, (3) subpoenaing the claimant's physicians or their records, (4) submitting questions to the claimant's physicians, (5) continuing the hearing, and (6) keeping the record open for supplementation. Tonapetyan, 242 F.3d at 1150; 20 C.F.R. §§ 404.1517 & 416.917; 42 U.S.C. § 423(d)(5)(A) & (B).  In order to demonstrate that an ALJ's decision should be set aside and the case remanded due to the ALJ's failure to fully develop the record, the claimant must show that she suffered prejudice or unfairness in the administrative proceeding.  Higbee, 975 F.2d at 561-62; Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981); Potts v. Astrue, No. CV 10-2781-JEM, 2011 WL 995856, at *4-5 (C.D. Cal. Mar. 17, 2011); Ramon v. Astrue, Civil No. 09cv2400-BEN (CAB), 2010 WL 5829547, at *11 (S.D. Cal. Dec. 30, 2010); Belcher v. Astrue, No. 1:09cv01234 DLB, 2010 WL 2353524, at *18-20 (E.D. Cal. June 9, 2010); McCormick v. Barnhart, No. C01-4489 MMC, 2004 WL 769386, at *13-14 (N.D. Cal. Apr. 6, 2004).

Here, plaintiff argues that the ALJ improperly based his assessment of plaintiff's functional limitations on a consultative examination that took place in June of 2007.  Plaintiff argues that the ALJ should have developed the record to include more recent information regarding plaintiff's functional limitations.

/////

1         The opinion at issue is that of Sandra Win, M.D., a physician who performed a complete internal medicine evaluation of plaintiff at the request of the state agency. (Tr. at 182-186.) Dr. Win reviewed available medical records, noting: "There is limited past medical history[,]" consisting of one note from Kaiser from October of 2005 and two notes from Axis Community Clinic from January and February of 2007. (Tr. at 182.) Dr. Win also conducted a physical examination. Her findings were based on formal testing and on her observation of plaintiff's spontaneous action. (Tr. at 184-186.) Dr. Win found plaintiff, who is 5'5" and weighed 176 pounds on the day of the examination, to be an obese 49-year-old female who was in no apparent distress during the interview and walked with a normal gait. (Tr. at 184.) In recording the history of plaintiff's complaints, Dr. Win noted that plaintiff reported she was a brittle diabetic and that her diabetes affected her vision, especially at night. (Tr. at 182.)

        Dr. Win also noted that plaintiff reported intermittent back pain with radiation down one leg or the other, and that plaintiff stated she could not sit or stand for a prolonged period of time. (Tr. at 183.) Plaintiff's past medical records included a January 2007 X-ray of the lumbosacral spine, which showed "advanced degenerative changes at L4 and S1, but no subluxation of the disc and no fractures." (Id.) Dr. Win noted that plaintiff was taking the medications Norco and Amitriptyline for her back pain. (Id.) Dr. Win further noted that plaintiff had Hepatitis C, with attendant headache, fatigue, and nausea, and that plaintiff stated "that her pain and fatigue have made her depressed. However, she denies any anhedonia, lack of motivation, memory or concentration problems." (Id.)

        Dr. Win diagnosed plaintiff as suffering from diabetes mellitus type 2 "without evidence of any neuropathy"; degenerative disc disease by history and x-ray with "with no signs of radiculopathy at this time"; Hepatitis C "with no constitutional symptoms at this time"; depression, by history; and hypertension. (Tr. at 186.) Dr. Win also rendered the following functional assessment of plaintiff:

/////

> The number of hours that the claimant could be expected to stand and walk in an eight-hour workday is without restriction with a regular number of breaks. The amount of weight that the claimant could lift and carry both frequently and occasionally is without restriction. There are no postural limitations on bending, stooping, or crouching. There is no limitation on reaching, handling, feeling, grasping, and fingering. These can be performed frequently without limitation. There are no relevant visual, communicative, and workplace environmental limitations.

(Tr. at 186.)

After summarizing Dr. Win's findings, the ALJ concluded:

> I give substantial weight to Dr. Win's opinion, as it was based on careful consideration of the claimant's symptoms as reported, and the doctor's clinical findings on examination. The opinion is consistent with all other medical evidence, and there are no conflicting medical opinions. Although Dr. Win did not suggest any exertional limitations, I assign a light physical residual functional capacity. As discussed below, the claimant's past relevant work was all sedentary or light, except for her job as a restaurant supervisor. Giving the claimant the benefit of the doubt as to her pain allegations, I find that she is unable to perform work at a medium exertional level.

(Tr. at 17-18.)

The ALJ also discussed plaintiff's treatment notes following her June 2007 examination by Dr. Win. In June 2008, plaintiff was referred for a six-week course of physical therapy treatment for her back pain. (Tr. at 18, 251.) Also that month, plaintiff was found to have renal cysts. (Tr. at 18, 254-255.)

In July 2008, plaintiff was treated for pain by Dr. Warren Clift. As the ALJ noted in his decision, Dr. Clift reported that plaintiff had experienced a decline in visual acuity due to intermittent blind spots in the left eye. She "displayed full strength and coordination except decreased handgrip, as she reported aggravation of hand pain when attempting testing." Dr. Clift noted that plaintiff "performed toe walk and tandem walking fairly well[,]" but "reported pain, weakness, and numbness, consistent with earlier treatment records showing diagnosis of possible neuropathy [nerve malfunction] and/or radiculopathy [nerve inflammation]." Dr. Clift

/////

prescribed pain medications as the only recommended treatment for plaintiff's condition.  (Tr. at 18, 240-241.)

In July of 2008, plaintiff also complained of abdominal pain, and treatment records indicated that she would be scheduled for cholecystectomy (gall bladder removal surgery) "in the near future."  (Tr. at 18, 249-250.)  A July 2008 X-ray showed "mild degenerative changes" within the dorsal spine.  (Tr. at 278.)  A CT scan in August of 2008 showed "mild to moderate lower lumbar facet arthropathy [joint disease] and mild degenerative change of both hips."  (Tr. at 276.)  Finally, "[a] treatment record from October 2008 shows the claimant's diabetes poorly controlled, and possibly some diabetes-related neuropathy."  (Tr. at 18, 252.)

Having discussed all of this medical evidence of record with respect to plaintiff, the ALJ concluded:

> The more recent medical evidence including the lumbar CT scan and possible neuropathy diagnosis suggest that her condition may be deteriorating, but no additional limitations have been suggested by treating or examining doctors, and the condition has not lasted for a continuous period of 12 months (20 CFR 404.1509 and 416.909).

(Tr. at 19.)

Although the ALJ clearly considered the medical evidence arising after Dr. Win's report was written, plaintiff contends that the ALJ should have further developed the record to allow a treating and/or examining doctor "to suggest additional limitations based on these more recent records." (Pl.'s Mem. In Supp. of MSJ at 10.)  However, the ALJ did not believe that the evidence was inconclusive, nor did his findings indicate that additional information or evidence was needed.  See 20 C.F.R. § 404.1519a (a consultative exam will be purchased only when additional information, not readily available from present records, is needed).  Moreover, at the administrative hearing, the ALJ specifically asked plaintiff whether she wanted to submit additional medical documentation, and plaintiff replied that there was none.  (Tr. at 30.)  Thus,

9

the ALJ reviewed all available medical records and found them to be consistent with Dr. Win's assessment of plaintiff's functional limitations. The ALJ also specifically questioned plaintiff about her allegations of pain and any related limitations. (Tr. at 36-45.) Insofar as the ALJ found the evidence of plaintiff's pain-related limitations to be ambiguous, he resolved the ambiguity in plaintiff's favor by assigning her a light RFC. (Tr. at 18.)

Moreover, the ALJ properly concluded that any recent deterioration in plaintiff's condition did not meet the twelve-month durational requirement. (Tr. at 19). See 42 U.S.C. §§ 404.1509, 416. 909 (the impairment must be one which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months); DeLorme v. Sullivan, 924 F.2d 841, 846-847 (9th Cir. 1991) ("an independent review of the record does not clearly demonstrate a twelve-month period during with DeLorme experienced a significant limitation of motion in the spine. Therefore, there is no twelve-month period in the record during which all the criteria in the Listing of Impairments are met."). In this regard, plaintiff contends that, because her diabetic neuropathy is not improving, it "must be expected to last" for a continuous period of twelve months. (Pl.'s Mem. In Supp. of MSJ at 10.) However, the ALJ interpreted plaintiff's treatment notes to indicate merely that her condition "may be" deteriorating. (Tr. at 19.) This does not amount to or support a finding that plaintiff is expected to be impaired for twelve months.

In light of the above, the undersigned finds that the ALJ did not violate his duty to develop the record. Thus, plaintiff is not entitled to summary judgment in her favor as to this claim.

## II. Severity of Impairments

Plaintiff next asserts that the ALJ erred in failing to find plaintiff's wrist pain and obesity to constitute severe impairments at the second step of the five-step evaluation process. (Pl.'s Mem. in Supp. of MSJ at 12.) Defendant counters that plaintiff did not meet her burden to prove these impairments severely limited her ability to function. (Resp't's Opp'n to MSJ at 12.)

At step two of the sequential evaluation process, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). Under the Commissioner's regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including (1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

"The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Smolen, 80 F.3d at 1290). See also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb, 433 F.3d at 686 (quoting Smolen, 80 F.3d at 1290).

Here, the ALJ made the following findings of fact:

> The claimant testified that she has residual pain following right wrist surgery. There is no medical evidence of significant treatment for unresolved pain or recommendation from any examining or treating doctor for further treatment or evaluation. She has also been diagnosed as obese with BMI 29.6. I find that these alleged impairments do not significantly interfere with the claimant's ability to perform work and are therefore found to be non-severe.

/////

(Tr. at 13.)

        Plaintiff asserts that she suffers from right-side wrist pain and weakened grip strength, and that these problems are due either to neuropathy or to "residual pain from the surgery" that she underwent in 2007 for carpal tunnel syndrome and tendinitis. (Pl.'s Mem. In Supp. of MSJ at 12-13.) Worker's Compensation Progress Notes from December 2005 through February 2006 indicate that plaintiff was suffering from pain in her right wrist, forearm, and shoulder, and that carpal tunnel surgery was planned. (Tr. at 159-158.) Plaintiff testified at the administrative hearing that she had surgery for tendinitis on her right hand sometime in 2007. (Tr. at 40.)

        However, when Dr. Win examined plaintiff in June 2007, she found plaintiff's motor and grip strength in the upper and lower extremities to be normal, with a normal range of motion in all planes, including wrists and finger/thumb joints. (Tr. at 17, 185-186.) Dr. Win concluded that there was no restriction on the amount of weight plaintiff could carry frequently or occasionally, and that there was "no limitation on reaching, handling, feeling, grasping, and fingering. These can be performed frequently without limitation." (Tr. at 186.) In his July 2008 neurological examination of plaintiff, Dr. Clift found: "There is full strength in coordination in the upper extremities except to note handgrip limited to 5 pounds per square inch. However, she reports aggravation of her hand pain on attempting this maneuver." (Tr. at 241.) Additional treatment notes from 2008 indicated that plaintiff "used more Norco secondary to hand hurting" and that she had "trouble lifting a gallon of milk." (Tr. at 256, 257.) However, at the time of the administrative hearing before the ALJ in October 2008, plaintiff testified that she was not being treated for any problem in her right hand. (Tr. at 39.)

        In sum, medical records indicate that plaintiff has consistently complained of pain and weakened grip strength in her right hand and wrist, both before and after her tendinitis surgery in 2007. However, substantial evidence in the record also supports ALJ's conclusion that plaintiff's post-surgical hand and wrist pain was not as debilitating as she claimed. This

1   evidence includes examining physician Dr. Win's finding that plaintiff had normal grip strength
2   and a normal range of motion in both arms and hands; treating physician Dr. Clift's finding that
3   plaintiff had full strength and coordination in both upper extremities except a somewhat limited
4   right handgrip; and the fact that plaintiff was not being treated for any hand problem in October
5   of 2008 at the time of the administrative hearing.  Plaintiff's statements about her reduced
6   functionality in her right hand implicate her credibility, and the ALJ did not find her entirely
7   credible, as discussed below.  Based on the lack of medical evidence that plaintiff's post-surgical
8   pain and/or neuropathy in her right hand and wrist limited her ability to function in any way, the
9   court concludes that the ALJ did not err in finding that plaintiff did not suffer from a severe
10  impairment in this respect.
11          Plaintiff also argues that the ALJ's failure to consider her obesity and its impact
12  on her functioning was error.  SSR 02-1p states that "[o]besity is a complex, chronic disease
13  characterized by excessive accumulation of body fat."  It further states that obesity "commonly
14  leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and
15  musculoskeletal body systems," and "may also cause or contribute to mental impairments such as
16  depression."  SSR 02-1p also requires an ALJ to consider an individual's obesity at steps two
17  through five of the sequential evaluation, and requires that obesity be considered in combination
18  with the individual's other impairments.  It also states that "[an adjudicator] will not make
19  assumptions about the severity or functional effects of obesity combined with other impairments.
20  Obesity in combination with another impairment may or may not increase the severity or
21  functional limitations of the other impairment. [The adjudicator] will evaluate each case based on
22  the information in the case record."
23          Here, while the record reflects that plaintiff's obesity is routinely noted by
24  physicians, none of those physicians have indicated that plaintiff's obesity adds to her
25  limitations.  Moreover, having lost 100 pounds, plaintiff  is arguably no longer obese.  In this
26  regard, the record establishes that in 2006, plaintiff weight 217 lbs at a height of 5'5", which

13

equates to a Body Mass Index ("BMI") of 36-37, considered obese. See SSR 02-1p (classifying a BMI of 30+ as generally considered obese.) (Tr. at 162.) By April of 2007, however, medical progress notes indicate that plaintiff had lost 100 pounds and weighted 176 lbs, giving her a BMI of 29.6. (Tr. at 13, 225.) Even if plaintiff may still be considered obese, she presented no testimony at the hearing, or any other evidence, that her obesity impaired her ability to work or that it affected her daily activities in any way. (Tr. at 30-45.) As to her weight, plaintiff merely testified that she had lost 100 pounds and, as a result, was no longer taking insulin for her diabetes. (Tr. at 39.)

For these reasons, the finding by the ALJ at step two of the sequential evaluation that Plaintiff's right wrist pain and obesity were non-severe is supported by substantial evidence in the record and free of legal error.

### III. Combination of Impairments

In a related argument, plaintiff contends that the ALJ also erred in failing to consider plaintiff's wrist pain and obesity in combination with her other impairments in determining her residual functional capacity. A claimant's impairments must be considered in combination. See Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990); 42 U.S.C. § 423(d)(2)(C) (requiring that "the combined effects of all of the individual's impairments" be considered, "without regard to whether any such impairment, if considered separately," would be sufficiently severe). The ALJ is to determine the effect of a claimant's obesity on his or her other impairments. See Celaya v. Halter, 332 F.3d 1177, 1181-82 (9th Cir. 2003). However, an "ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) citing Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001))..

As discussed above, here the ALJ addressed evidence of plaintiff's wrist pain and obesity and reasonably concluded that neither reached even the threshold degree of severity

14

required at step two of the sequential evaluation process.  The ALJ also properly reviewed the medical evidence concerning plaintiff's functionality, most notably Dr. Win's findings that plaintiff had no functional limitations, as discussed above.  Dr. Win's diagnosis of plaintiff did not include obesity, tendinitis, or other wrist-related pain.  Rather, Dr. Win noted that plaintiff lacked "evidence of neuropathy" and there were "no signs of radiculopathy at this time."  Dr. Win also concluded that plaintiff could perform reaching, handling, feeling, grasping, and fingering frequently and without limitation.  (Tr. at 186.)  Moreover, neither Dr. Win nor treating physician Dr. Clift indicated in their reports that plaintiff's obesity limited her ability to function in any way.  Thus, the ALJ's reasons for giving no further consideration to these alleged impairments in making the RFC determination are supported by substantial evidence in the record.

## IV. Credibility

Finally, plaintiff contends that the ALJ erred in failing to credit plaintiff's allegations that her impairments were disabling.  It is well established that once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the symptoms are unsupported by objective medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997).  In such circumstances, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'"  Light, 119 F.3d at 792 (quoting Smolen v. Chater, 80 F.3d at 1273, 1281 (9th Cir.1996)).

In evaluating a claimant's subjective testimony regarding pain and the severity of her symptoms, the ALJ may, of course, consider the presence or absence of supporting objective medical evidence, along with other factors.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir.1991) (en banc); see also Smolen, 80 F.3d at 1285.  Absent affirmative evidence of malingering,

/////

however, the reasons for rejecting a claimant's testimony must nonetheless be clear and convincing. Morgan, 169 F.3d at 599.

Questions of credibility and the resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. Determination of credibility is said to be a function of the ALJ acting on behalf of the Commissioner. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir.1996). In general, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir.1985). Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. Fair v. Bowen, 885 F.2d 597, 604 n. 5 (9th Cir.1989).

Here, as the ALJ noted, plaintiff testified that she had "back pain, with occasional radiating pain and numbness in her legs and her dominant right hand"; numbness and tingling in her feet after sitting for a long period of time; tingling and reduced grip strength in her right hand; weakness, fatigue, and pain resulting from kidney and gall stones; and depression. (Tr. at 15-16.) The ALJ concluded that

> the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The severity, intensity, and frequency of symptoms as reported by the claimant are not supported by the medical evidence.

(Tr. at 17.) Elsewhere, the ALJ found that plaintiff "does have some pain symptoms attributable to degenerative disc disease, but medical evidence such as the consultative examiner's opinion shows she is not as limited in functional capacity as she alleges." (Tr. at 19.) Commenting directly on plaintiff's credibility, the ALJ stated: "There is no medical evidence of follow-up, evaluation, and treatment, or scheduled surgical procedures as described by the claimant's testimony." (Tr. at 18.)

The court notes that plaintiff testified at the administrative, for example, that a doctor recommended that she have surgery on her back, but she chose not to undergo it because a family member's condition had worsened after back surgery. (Tr. at 37-38.) However, the record does not appear to contain, and plaintiff does not cite, any medical opinion advising plaintiff to have any such surgery on her back. Rather, as plaintiff notes, "[a]s of the last dated treatment note on October 1, 2008, a few weeks before Ms. Freeman's hearing on October 15, 2008, Ms. Freeman's nerve conduction study was being scheduled." (Pl.'s Mem. In Supp. of MSJ at 7; Tr. at 252.) Plaintiff also testified at the hearing that a doctor had advised her that her kidney stone was too large to break up with ultrasound, and they were going to have to "take my kidney, and I'm just not agreeable with that right now." (Tr. at 45.) However, while the medical records of evidence indicate that gall bladder surgery was planned for plaintiff as of July 2008 (Tr. at 249-250), nothing in the record suggests that plaintiff was advised by any physician to have her kidney removed due to renal cysts. The ALJ could properly consider these discrepancies in evaluating plaintiff's credibility.

Continuing to weigh plaintiff's allegations of severe impairments in light of the medical evidence, the ALJ noted that plaintiff was not currently receiving any treatment for her right hand, nor for depression. (Tr. at 15.) The ALJ also noted that plaintiff's then-current medications included Norco, Amitriptyline, and diabetes medication, but that after losing 100 pounds, plaintiff was no longer insulin dependent for her diabetes. (Tr. at 16.)

As discussed above, the ALJ gave "substantial weight" to Dr. Win's opinion that plaintiff had "some point tenderness in the lower spine" but otherwise tested normally and had no restrictions on her functional capacity. (Tr. at 17.) "Other medical evidence shows only conservative treatment for pain symptoms[,]" the ALJ stated, noting that in 2007 plaintiff was prescribed 2-3- Norco a night and in 2008, a six-week course of physical therapy, both for her low back pain. (Tr. at 18.) While the records established that plaintiff had sought treatment for back and leg pain and other ailments, the ALJ stated, "the only clear diagnoses for which she receives

1 significant treatment are degenerative changes in her back and the newly-emerged possibility of
2 diabetic neuropathy." (Tr. at 18-19.)

3 The ALJ also gave "great weight" to the opinion of Said Shefayee, M.D., who
4 conducted a psychiatric consultative examination of plaintiff in June of 2007 and determined that
5 plaintiff's depression, anger, and anxiety did not prevent her from performing simple repetitive
6 tasks, taking instruction, or interacting with coworkers. (Tr. at 19, 190-93.) As to plaintiff's daily
7 activities, the ALJ noted that, in a March 2007 report, plaintiff stated that she was able to get her
8 children up, fix breakfast, get her children to school, run errands, go to doctors' appointments,
9 prepare dinner, clean up after dinner, go for a run, exercise, and attend religious services and other
10 events. (Tr. at 16, 95-100.)[3] For all of these reasons, the ALJ discounted plaintiff's testimony as
11 to the severity and limiting effects of her pain and various ailments.

12 The court finds that the ALJ's analysis of the credibility of plaintiff's testimony is
13 supported by substantial evidence in the record and by the application of proper legal standards.
14 For these reasons, the court finds that plaintiff is not entitled to summary judgment on her claim
15 that the ALJ failed to properly evaluate and credit her testimony regarding the nature and extent of
16 her functional limitations.

17 /////
18 /////
19 /////
20 /////

---

[3] The court recognizes that, it is well established that claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). In general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). See also 20 C.F.R. § 404.1545(e). However, some of the daily activities engaged in by plaintiff and noted by the ALJ are substantial gainful activities.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's April 15, 2010 motion for summary judgment (Doc. No. 15) is denied; and

2. The decision of the Commissioner of Social Security is affirmed.

DATED: March 30, 2011.

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:3
free2334.order